FILED
2018 Sep-18 AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CHERYL ANN FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 5:17-cv-00248-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I. Introduction**

The plaintiff, Cheryl Ann Fields, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a Period of Disability and Disability Insurance Benefits ("DIB"). Ms. Fields timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]

---

[1] In a decision dated November 21, 2013, the Administrative Law Judge found the plaintiff was not disabled. (Tr. at 142-62.) The Appeals Council remanded the case on May 22, 2015. (Tr. at 168-71.) Following another hearing on March 9, 2016, the Administrative Law Judge again issued an unfavorable decision on July 6, 2016. (Tr. at 98-124, 25-51.) The Appeals Council denied the plaintiff's request for review. (Tr. at 1-4.)

1

Ms. Fields was 56 years old at the time of the Administrative Law Judge's ("ALJ's") decision. She has an associate's degree. (Tr. at 49.) Her past work experiences include employment as a waitress and a clerk. (Tr. at 118.) Ms. Fields claims that she became disabled on July 30, 2009, as a result of degenerative disk disease, irritable bowel syndrome, opioid dependence, history of laminectomy, panic disorder, anxiety disorder, post-traumatic stress disorder, and recurrent major depression. (Doc. 12 at 1.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine

whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Fields last met the insured status requirements of the Social Security Act on December 31, 2014, meaning that for DIB purposes she had to establish disability before that date. (Tr. at 30.) He further determined that Ms. Fields has not engaged in SGA since the alleged onset of her disability through the date last insured. (*Id.*) According to the ALJ, Plaintiff's opioid dependence, degenerative disk disease, central disk protrusion at L5-S1 with no root nerve impingement, history of laminectomy at L4-L5, anxiety disorder, dysthymic disorder, major depressive

4

disorder, panic disorder, and post-traumatic stress disorder ("PTSD") are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 39.) The ALJ did not find Ms. Fields's allegations to be totally credible, and he determined that she had the following RFC through the date last insured: the claimant could perform light work except that she could occasionally lift and carry twenty pounds and frequently ten pounds; is able to sit, stand, and/or walk for six hours during an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme heat and cold and vibration; should avoid all exposure to unprotected heights and hazardous machinery; and her work should be limited to unskilled work. (Tr. at 41.)

According to the ALJ, Ms. Fields was unable to perform any of her past relevant work through the date last insured, she was a "younger individual age 18-49" on the date last insured, and she has "at least a high school education" as those terms are defined by the regulations. (Tr. at 49.) He did not determine the transferability of Plaintiff's job skills because they were "not material to the determination of disability." (*Id.*) Because Plaintiff had solely non-exertional

5

limitations, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 204.00 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as marker, router, and cleaner. (Tr. at 50.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from July 30, 2009, the alleged onset date, through December 31, 2014, the date last insured." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Fields alleges that the ALJ's decision should be reversed and remanded for several reasons. First, she argues with the weight the ALJ gave to the opinions

7

of her treating physician and to a non-examining physician. Second, Plaintiff contends that the ALJ erred in his consideration of her daily activities. Third, she argues that the ALJ did not fully develop the record.

### A. Weight Given to the Medical Source Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable

8

medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good

cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); SSR 96-6p. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of

the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

### 1. Treating Physician's Opinion

Dr. Thomas Darnell has treated Plaintiff since June 2013. (Tr. at 952-58, 967-73, 990-94, 1086-91, 1309.) In March 2016, Dr. Darnell completed a "Medical Source Opinion" (physical) questionnaire. (Tr. at 1380.) In this questionnaire, he determined that Plaintiff could stand no more than one to two hours in an eight-hour work day, walk one to two hours, and sit for three to four hours. (*Id.*) Dr. Darnell opined that Plaintiff could only occasionally lift and carry five pounds. (*Id.*) He further opined that she could occasionally push and pull but could never climb, stoop, kneel, crouch, or crawl, and she could never tolerate exposure to environmental factors such as extreme cold or heat, wetness or humidity, fumes, proximity to moving mechanical parts, or driving automotive equipment. (Tr. at 1380-81). Dr. Darnell did not identify any clinical findings to support his questionnaire responses. (Tr. at 1380-81). Dr. Darnell also indicated that

Plaintiff's pain was "irretractable," "virtually incapacitating," and would prevent Plaintiff from working. (Tr. at 1382-83.)

The ALJ considered Dr. Darnell's opinion but gave it little weight because it was inconsistent with the conservative treatment he administered for Plaintiff's pain as well as the other medical evidence of record. (Tr. at 39, 48.) Good cause supports the ALJ's decision here. As noted by the ALJ, Dr. Darnell's own treatment notes reflect that he treated Plaintiff's complaints of pain conservatively and consistently decreased her pain medications. (Tr. at 958, 973, 994, 1090). *See* 20 C.F.R. § 405.1529(c)(3)(iv), (v); *Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir. 1996) (evidence of conservative treatment undermines allegations of disabling pain). Further, as the ALJ noted, Dr. Darnell's opinion that Plaintiff was unable to engage in any work activities due to her pain was inconsistent with evidence that Plaintiff reported to her physical therapist that she was practicing yoga and had benefitted from her yoga classes. (Tr. at 48, 1307, 1314, 1354). Plaintiff's reported enjoyment of yoga and interest in taking Tai Chi classes undermines Dr. Darnell's opinion that she was severely limited in physical activity. *See Phillips*, 357 F.3d at 1241 (a claimant's daily activities can be considered when assigning weight to a doctor's opinion).

Plaintiff argues that the ALJ failed to consider factors such as the length of Dr. Darnell's treatment of Plaintiff or his familiarity with Plaintiff's overall physical condition and impairments. However, the ALJ acknowledged Dr. Darnell as a treating physician. (Tr. at 39). Moreover, other factors outweigh Dr. Darnell's treatment relationship with Plaintiff: namely, his conservative treatment regimen and her ability to engage in various daily activities, such as yoga, that require some level of physical exertion. The Court finds no error in the ALJ's treatment of Dr. Darnell's opinion.

### 2. Non-Examining Physician

Dr. Lisa Wright, a state agency medical consultant, reviewed the available evidence and on October 25, 2012, completed an RFC (physical) questionnaire opining that Plaintiff could perform light work with some postural and environmental restrictions. (Tr. at 133-36). More specifically, Dr. Wright stated that the plaintiff could occasionally lift twenty pounds and frequently ten pounds; sit, stand, and walk six hours of an eight-hour workday; climb stairs; balance; kneel; crawl; and crouch; but never climb ladders, ropes, or scaffolds. (*Id.*)

The ALJ gave significant weight to Dr. Wright's opinion because it was consistent with the objective medical evidence. (Tr. at 48-49). Substantial evidence supports the ALJ's decision here. Although, as pointed out by Plaintiff, Dr. Wright

did not review the entire record—and could not because her opinion was issued prior to Plaintiff's date last insured—her opinion is nonetheless supported by the objective medical findings and consistent with the record as a whole. For example, Dr. Wright's opinion is consistent with physical examination findings at Chronic Pain Care Services, which noted only moderate tenderness in Plaintiff's lumbar spine and only limited her range of motion by 25%. (Tr. at 575.) The opinion is also consistent with the plaintiff's bone density scan on July, 18, 2012, which revealed only mild osteopenia at L1-L4. (Tr. at 626-816). Dr. Wright's opinion of what Plaintiff could do also accords with Dr. Darnell's conservative treatment for her pain. (Tr. at 958, 973, 994, 1090.) The Court finds no error in the ALJ's treatment of Dr. Wright's opinion.

### B. Consideration of Plaintiff's Daily Activities

The plaintiff takes issue with the fact that the ALJ took her daily activities into account when discrediting Dr. Darnell's opinion and determining her RFC. (Tr. at 48-49.) Specifically, Plaintiff draws a distinction between activities performed on her own time and the rigors and expectations of performing similar activities in a work setting, contending that the ALJ should not have considered the former but should have only considered the latter. (Doc. 15 at 1.) Plaintiff cites nonbinding cases from other jurisdictions for her claim. *See, e.g., Mendez v.*

*Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (holding that in order to use daily activities in a determination of RFC, an ALJ must articulate why the activities are similar to work).

The plaintiff's claim fails because, although not dispositive, a claimant's ability to perform various activities of daily living may show that the claimant's symptoms are not as limiting as alleged and may be considered by an ALJ for numerous purposes, such as assigning weight to a doctor's opinion and in making a credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Moreover, the Eleventh Circuit has not created any requirement that an ALJ justify his or her consideration of a claimant's daily activities by analogizing them to work activities.

In this case, the ALJ noted that Plaintiff's participation in and enjoyment of yoga classes were evidence that contradicted the severity of pain described in Dr. Darnell's opinion. (Tr. at 48, 1307, 1354.) Additionally, the ALJ considered the non-medical testimony of Mr. Flomig, Plaintiff's husband. (Tr. at 49.) Mr. Flomig testified that Plaintiff completes light chores such as laundry and dishes, prepares meals, cares for grandchildren, travels alone, socializes with others, and has no problem taking care of her personal care needs. (Tr. at 339-46.) In both determining the plaintiff's RFC and the weight given to Dr. Darnell's opinion, the ALJ did not

rely entirely on the plaintiff's daily activities and considered other appropriate medical evidence in coming to his conclusion, as discussed in the above section. It was not inappropriate for the ALJ to consider Plaintiff's daily activities when determining the plaintiff's RFC and assigning weight to Dr. Darnell's opinion.

### C. Development of the Record

Plaintiff argues that the ALJ should have sought additional medical records from her treating physicians, Dr. Darnell and Dr. Fredette, which would support or clarify their opinions rather than finding her physicians' opinions were unsupported by the evidence of record.

An ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1423 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (quotation marks omitted). Moreover, "the claimant bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support h[er] claim." *Ellison*, 355 F.3d at 1276. "It is not unreasonable to require

the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Along these lines, "An ALJ should re-contact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010); 20 C.F.R §§ 404.1512(e), 416.912(e).

Plaintiff fails to establish that any additional records from these physicians even exist and what they would say in support of her disability claim. Plaintiff thus makes no "clear showing of prejudice" as is required when arguing that the record was inadequately developed. *Graham*, 129 F.2d at 1422. Accordingly, the Court will not remand this action for further development of the record.

**IV. Conclusion**

Upon review of the administrative record, and considering all of Ms. Fields's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 18, 2018.

                                              L. Scott Coogler
                                      United States District Judge

160704